■ PATRICIA SURIEL et al., Appellants, v DOMINICAN REPUBLIC EDUCATION AND MENTORING PROJECT, INC., Also Known as DREAM, et al., Respondents. (And Another Related Action.) [926 NYS2d 198]—

Garry, J. Appeal from an order of the Supreme Court (Mulvey, J.), entered June 30, 2010 in Tompkins County, which granted

defendants' motions for partial summary judgment dismissing plaintiffs' first, second and sixth causes of action.

Plaintiff Patricia Suriel began serving as executive director of defendant Dominican Republic Education and Mentoring Project, Inc. (hereinafter DREAM) in 2002. Suriel's father, plaintiff Edward Thorndike, served as DREAM's volunteer bookkeeper. Suriel's relationship with defendant Michel Zaleski, the president of DREAM and chair of its board of directors, soured in late 2008, shortly after she attempted to terminate DREAM's Dominican Director, Jonathan Wunderlich. Suriel was terminated in 2009, allegedly for insubordination, mismanagement and personal use of the organization's funds.

Plaintiffs commenced the present action alleging, among other things, that defendants violated the Human Rights Law (see Executive Law § 290 et seq.) by subjecting Suriel to a sex-based hostile work environment and retaliating against her for taking steps to correct it. The complaint further alleged that defendants intentionally inflicted emotional distress upon plaintiffs. Following joinder of issue, defendants separately moved for partial summary judgment on those causes of action. Supreme Court granted the motions, and plaintiffs appeal.[1]

We affirm. Initially, plaintiffs argue that the summary judgment motions should have been denied pending further discovery, but they fail to demonstrate how the discovery they seek would yield material evidence (see CPLR 3212 [f]; Beesmer v Besicorp Dev., Inc., 72 AD3d 1460, 1461 [2010]). To the extent that plaintiffs made that showing as to further discovery regarding DREAM's finances, they have not shown how the discovery may reveal material facts within defendants' exclusive knowledge (see Beesmer v Besicorp Dev., Inc., 72 AD3d at 1461). Indeed, the sought-after discovery includes a deposition of Thorndike, who is plainly not under defendants' control. Accordingly, we find no abuse of discretion in Supreme Court's denial of plaintiffs' request to deny or delay defendants' motions (see Gersten-Hillman Agency, Inc. v Heyman, 68 AD3d 1284, 1288 [2009]).

Turning to the merits, as the party alleging gender discrimination, Suriel bore the initial burden of showing "that (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or

---

1. Plaintiffs failed to address in their appellate brief the dismissal of the intentional infliction of emotional distress claim and, accordingly, any issues with respect thereto are deemed abandoned (see Randall v Time Warner Cable, Inc., 81 AD3d 1149, 1150 n [2011]).

other adverse action occurred under circumstances giving rise to an inference of discrimination" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *see Singh v State of N.Y. Off. of Real Prop. Servs.*, 40 AD3d 1354, 1355-1356 [2007]). The first three elements were not at issue here. As to the fourth, Suriel asserted that she was subjected to a hostile work environment as a result of sexual harassment. This claim required her to demonstrate that discriminatory "conduct occurred because of her sex" (*Alfano v Costello*, 294 F3d 365, 374 [2d Cir 2002]; *see Oncale v Sundowner Offshore Services, Inc.*, 523 US 75, 79-81 [1998]; *Mauro v Orville*, 259 AD2d 89, 92 [1999], *lv denied* 94 NY2d 759 [2000]).[2] However, Suriel did not allege that the conduct directed toward her was sexual in nature; instead, she asserted that it constituted retaliation for her complaints to DREAM's board of directors regarding Zaleski's behavior towards other women, as well as her termination of Wunderlich.[3] As Suriel thus provided nothing to "plausibly connect[ ] any of the actions taken against" her to her gender, her discrimination claim was properly dismissed (*Krasner v HSH Nordbank AG*, 680 F Supp 2d 502, 517 [SD NY 2010]; *see Brown v Henderson*, 257 F3d 246, 255-256 [2d Cir 2001]; *Leibovitz v New York City Tr. Auth.*, 252 F3d 179, 189-190 [2d Cir 2001]).

Plaintiffs' emphasis was on the retaliation claim, upon which they were required to show in the first instance "that (1) [Suriel] was engaged in a protected activity, (2) [defendants were] aware of that activity, (3) she suffered an adverse employment action and (4) there was a causal connection between her protected activity and the adverse employment action" (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 53 AD3d 823, 825 [2008]; *see Forrest v*

---

**2.** The standards for recovery under the Human Rights Law are identical to those set out under title VII of the federal Civil Rights Act of 1964, and both state and federal decisional authority are accordingly helpful in resolving the present appeal (*see Forrest v Jewish Guild for the Blind*, 3 NY3d at 305 n 3; *Matter of Tosha Rests., LLC v New York State Div. of Human Rights*, 79 AD3d 1337, 1340 n [2010]).

**3.** To the extent that Suriel seeks to establish that a hostile work environment was created by Zaleski's alleged sexual conduct involving other women (*see Vinson v Taylor*, 753 F2d 141, 146 [DC Cir 1985], *affd sub nom. Meritor Savings Bank, FSB v Vinson*, 477 US 57 [1986]), we note that the conduct in question was never witnessed by Suriel, occurred infrequently over the course of several years, and occurred at work on only one occasion. Such allegations are insufficient to demonstrate "that an environment existed at work that was hostile to [Suriel] because of her sex" (*Leibovitz v New York City Tr. Auth.*, 252 F3d 179, 190 [2d Cir 2001]) or that "a term, condition or privilege" of Suriel's employment was affected (*Pace v Ogden Servs. Corp.*, 257 AD2d 101, 103 [1999]).

*Jewish Guild for the Blind*, 3 NY3d at 312-313). Seeking to establish the first of these elements, Suriel claimed that complaining to Zaleski about his "inappropriate sexual relationships" and advising the board of directors of his "inappropriate behavior" and that of Wunderlich constituted protected activity. However, she failed to assert that she had *complained* that either Zaleski or Wunderlich had engaged in sexual harassment or discrimination. No such allegations appear in Suriel's extensive correspondence with Zaleski and the board of directors during the relevant time period, nor were any such complaints mentioned in letters later submitted on her behalf by two board members. Plaintiffs did not show that Suriel engaged in protected activity by "opposing or complaining about unlawful discrimination" (*Singh v State of N.Y. Off. of Real Prop. Servs.*, 40 AD3d at 1357) and therefore failed to establish a prima facie case of retaliation, making summary judgment proper (*see Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]).

Even if plaintiffs had met the "low threshold" of establishing a prima facie case (*Singh v State of N.Y. Off. of Real Prop. Servs.*, 40 AD3d at 1356), defendants satisfied their burden to "present legitimate, independent and nondiscriminatory reasons to support their actions" by showing that Suriel was terminated for insubordination and improper use of DREAM funds (*Pace v Ogden Servs. Corp.*, 257 AD2d 101, 104 [1999]; *see Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson*, 41 AD3d 1138, 1140 [2007], *lv denied* 10 NY3d 706 [2008]). Plaintiffs attempted to raise questions of fact as to whether those reasons were pretextual (*see Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson*, 41 AD3d at 1140) by pointing out that intensive efforts to determine if Suriel had misused DREAM funds were not made until around the time she allegedly engaged in protected activity.[4] However, plaintiffs cannot "avoid summary judgment by merely pointing to the inference of causality resulting from the sequence in time of the events" (*Forrest v Jewish Guild for the Blind*, 3 NY3d at 313 [internal quotation marks and citation omitted]). The record demonstrates that Zaleski's concerns about Suriel's financial management arose in the midst of financial turmoil at DREAM, which he and others allegedly feared would be exacerbated by the timing of her decision to fire Wunderlich. DREAM's board of directors later approved Suriel's termination after an accountant determined that she had expended DREAM funds for unap-

---

4. Suriel did not address the charge of insubordination in her opposition to the motions or in her appellate brief.

proved purposes. Under these circumstances, the temporal proximity between the alleged protected activity and Suriel's discharge was insufficient, standing alone, to pose issues of fact upon her retaliation claim (*see Shelton v Trustees of Columbia Univ.*, 369 Fed Appx 200, 202 [2d Cir 2010]; *Koester v New York Blood Ctr.*, 55 AD3d 447, 449 [2008]; *Dorvil v Hilton Hotels Corp.*, 25 AD3d 442, 443 [2006]).

Rose, J.P., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs.