Rose, J.
Appeal from a judgment of the Court of Claims (Collins, J.), entered June 18, 2010, upon a decision of the court in favor of defendant.
Claimant, a correction officer employed by the Department of Corrections and Community Supervision since 1997, commenced this action pursuant to Executive Law § 296 claiming that he was subjected to retaliation and a hostile work environment. After trial, the Court of Claims concluded that claimant failed to establish either claim and dismissed the action. Claimant appeals.
In support of his retaliation claim, claimant contends that the discipline he received after engaging in an on-duty physical *1386 confrontation with another correction officer was retaliatory because he had previously filed complaints against his supervisors alleging racism. Claimant argues that the Court of Claims erred by overlooking the fact that the other correction officer involved in the confrontation was not disciplined at all and that a different correction officer involved in a similar but unrelated incident received a lesser punishment. We are not persuaded.
To establish a claim for retaliation, claimant was required to prove that he engaged in protected activity, that his employer was aware that he engaged in such activity, that he suffered an adverse employment action based upon his activity and that there is a causal connection between the protected activity and the adverse action (see Forrest v Jewish Guild for the Blind, 3 NY3d 295, 313 [2004]; Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d 1464, 1466 [2011]). While the first three elements of a retaliation claim are not disputed here, the Court of Claims concluded that there was no evidence of a causal connection between the protected activity and the discipline imposed on claimant. In reaching that conclusion, the court credited the version of events reported by the witnesses to the confrontation and determined that claimant was the aggressor. We afford deference to that credibility determination (see Kinge v State of New York, 79 AD3d 1473, 1480 [2010]; Shirvanion v State of New York, 64 AD3d 1113, 1114 [2009]). Also, the court’s finding that claimant’s confrontation was more serious than the unrelated incident is supported by the undisputed evidence that there were approximately 65 unconfined inmates in the immediate vicinity observing claimant’s confrontation. The facility superintendent testified that, given this circumstance, claimant’s conduct could have had serious consequences. In contrast, the evidence reveals that the unrelated incident occurred away from the inmate population.
To support a retaliatory hostile work environment claim, the actions complained of must be sufficiently severe or pervasive to constitute actionable harassment and stem from a retaliatory animus (see Noviello v City of Boston, 398 F3d 76, 92-93 [1st Cir 2005]; Sclafani v PC Richard & Son, 668 F Supp 2d 423, 438-439 [ED NY 2009]).* All of the circumstances must be considered, including “ ‘the frequency of the [retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance’ ” (Forrest v *1387 Jewish Guild for the Blind, 3 NY3d at 310-311, quoting Harris v Forklift Systems, Inc., 510 US 17, 23 [1993]). “[T]he conduct must both have altered the conditions of the victim’s employment by being subjectively perceived as abusive by the [claimant], and have created an objectively hostile or abusive environment — one that a reasonable person would find to be so” (Forrest v Jewish Guild for the Blind, 3 NY3d at 311). Generally, “ ‘[isolated remarks or occasional episodes of harassment will not support a finding of a hostile or abusive work environment’ ” (Ferrer v New York State Div. of Human Rights, 82 AD3d 431 [2011], quoting Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, 221 AD2d 44, 51 [1996], lv denied 89 NY2d 809 [1997]).
Claimant argues that the initial instance of retaliatory conduct against him was a one hour change in his shift that occurred in 2002 when he worked at Sing Sing Correctional Facility in Westchester County. While claimant acknowledged that he had not filed any written complaints prior to the change in schedule, he claimed that he had made oral complaints about his supervisor and that the shift change was in retaliation for those complaints. The record evidence, however, does not support the claim of prior oral complaints, and the Court of Claims did not believe claimant’s testimony. We will defer to that credibility determination and, in the absence of any prior complaints, we agree that there can be no motive to retaliate (see Grovesteen v New York State Pub. Empls. Fedn., AFL-CIO, 83 AD3d 1332, 1334 [2011], lv denied 17 NY3d 707 [2011]; Singh v State of N.Y. Off. of Real Prop. Servs., 40 AD3d 1354, 1357 [2007]). Although claimant testified that he voluntarily transferred to Sullivan Correctional Facility in Sullivan County shortly after his shift had been changed because his Sing Sing Correctional Facility supervisor called him a “cry baby,” the record supports the conclusion of the Court of Claims that the supervisor’s conduct did not pervade claimant’s work environment or rise to an actionable level (see Forrest v Jewish Guild for the Blind, 3 NY3d at 311).
Nor do the other actions complained of, when objectively viewed, rise to an actionable level. Although claimant relies on two verbal confrontations that he had with a Sullivan Correctional Facility supervisor in June 2003 and August 2004 that resulted in his counseling by the supervisor, we find ample support for the conclusion that claimant’s conduct was inappropriate during each incident, and that the counseling he received was not motivated by retaliatory animus. The evidence also supports the finding that there was no retaliatory motive behind *1388 the change in claimant’s 2005 performance evaluation or the recision of his temporary promotion to sergeant.
To be sure, claimant was subjected to “inexcusable” incidents of racist enmity while working (id. at 310). While at Sullivan Correctional Facility, his photograph was posted in the correction officers’ lineup area with derogatory phrases and slurs written on it. Claimant was also subjected to the jibes from coworkers who disparaged his Irish heritage and referred to him as “Reverend Al,” and was further exposed to racist media and jokes. He found this behavior to be abhorrent and reprehensible and, indeed, employers such as defendant are “well advised to adopt zero tolerance policies in the workplace” to combat it (id.). The record nevertheless demonstrates that defendant did not acquiesce in this conduct — which was isolated and occurred over the course of many years — and the record demonstrates that it was not sufficiently severe or pervasive so as to create an actionable hostile work environment (see id. at 311; Barnum v New York City Tr. Auth., 62 AD3d 736, 737-738 [2009]; compare Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 53 AD3d 823, 825 [2008]; Matter of Anagnostakos v New York State Div. of Human Rights, 46 AD3d 992, 993 [2007]).
We have reviewed claimant’s remaining contentions and find them to be without merit.
Peters, P.J., Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.

 The standards for recovery under the Human Rights Law are the same as those under title VII of the federal Civil Rights Act of 1964 (see Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d at 1466 n 2).