Clark, J.
 

 Appeal from an order of the Supreme Court (Ryba, J.), entered March 14, 2016 in Albany County, which, among other things, granted defendants’ motion for summary judgment dismissing the complaint.
 

 In December 2007, plaintiff — who has Tourette’s syndrome and spinal stenosis — began his probationary employment as a nurse at defendant Capital District Psychiatric Center (hereinafter CDPC), a psychiatric facility operated by defendant Office of Mental Health (hereinafter OMH). During his first year of employment at CDPC, plaintiff was primarily assigned to the crisis inpatient unit. However, in December 2008, at or around the time that he received a poor performance evaluation, plaintiff was transferred to CDPC’s admissions unit, unit M. The following month, plaintiff received another poor performance evaluation and his year-long probationary period was ultimately extended for a period of six months. Thereafter, defendant Julie Gorman — CDPC’s Director of Nursing — notified plaintiff by email that she was transferring him to the geriatric unit, unit H. Plaintiff declined the transfer, claiming that it would be too hard with his disabilities. Over the following days, plaintiff and Gorman exchanged several emails concerning plaintiff’s asserted need for a reasonable accommodation, with Gorman directing plaintiff to the human resources department to fill out paperwork regarding his specific medical limitations and required accommodations. Plaintiff did not avail himself of this process and, soon after, left on workers’ compensation leave.
 

 While plaintiff was on workers’ compensation leave, plaintiff’s counsel, by letter dated February 24, 2009, stated that unit H was not an appropriate work environment for plaintiff because the work required on that unit would aggravate his symptoms of spinal stenosis and the elevated levels of stress and anxiety that accompanied such work caused “an increase in the severity and frequency of [plaintiff’s] neurological tics.” Plaintiff’s counsel requested that CDPC reasonably accommodate plaintiff’s disabilities by assigning him to either the crisis inpatient unit or unit M because they were “markedly less stressful and physically strenuous environments” for plaintiff. Counsel further stated that CDPC had on file a notice of plaintiff’s eligibility for employment pursuant to Civil Service Law §§ 55-b and/or 55-c, statutes that provide state employment opportunities in noncompetitive positions for veterans and other individuals who have been certified as having a physical or mental disability.
 

 The February 2009 letter was received by defendant David J. Hernandez, CDPC’s Deputy Director of Administration. Hernandez asserted that, upon receiving the letter, he directed Gorman to determine the feasibility of plaintiff’s request and asked human resources staff to investigate whether plaintiff’s notice pursuant to Civil Service Law §§ 55-b and/or 55-c was included in his personnel file or civil service employment history. According to defendants, the notice was not located in plaintiff’s personnel file and, in looking at plaintiff’s employment history, CDPC discovered that plaintiff had been previously employed for roughly 14 years at a similar state-operated facility, a job which plaintiff had not specifically listed on his civil service application, his subsequent OMH application or his résumé. Based on its interpretation of plaintiff’s state employment records, CDPC believed that plaintiff had been suspended from his prior state position on more than one occasion and that he was terminated from that position. Shortly thereafter, by letter dated March 17, 2009, CDPC terminated plaintiff’s employment, effective March 24, 2009, stating that the termination was “a result of [plaintiff] providing false information on [his] employment application.”
 

 Plaintiff thereafter commenced this action, alleging that CDPC and OMH had engaged in an unlawful discriminatory practice by refusing to provide reasonable accommodations for his disabilities (see Executive Law § 296 [3]), that all defendants had engaged in an unlawful discriminatory practice by “retaliating] against [him] for requesting a reasonable accommodation” (see Executive Law § 296 [7]) and that Hernandez and Gorman had violated his right to equal protection under the Fourteenth Amendment.
 
 [1]
 
 Plaintiff also asserted a claim against Gorman and Hernandez for aiding and abetting CDPC and OMH in the commission of acts prohibited under Executive Law article 15 (see Executive Law § 296 [6]). Following joinder of issue and extensive discovery, defendants moved for summary judgment dismissing the complaint. Plaintiff opposed defendants’ motion and cross-moved for an order pursuant to CPLR 3126 precluding the consideration of three affidavits submitted by defendants in support of their motion. Supreme Court denied plaintiff’s cross motion, granted defendants’ motion and dismissed the complaint in its entirety. Plaintiff now appeals, and we affirm.
 

 Initially, we discern no abuse of discretion in Supreme Court’s determination to deny plaintiff’s cross motion to preclude consideration of three affidavits submitted by defendants in support of their motion for summary judgment dismissing the complaint. Pursuant to CPLR 3126, a trial court may preclude a party from producing certain evidence if it determines that the party “wil[l] fully failfed] to disclose information which . . . ought to have been disclosed.” However, the determination of whether or not to impose a sanction under CPLR 3126 is committed to the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion (see Seale v Seale, 149 AD3d 1164, 1165 [2017]; Kim v A. Johnson Plumbing & Heating, Inc., 148 AD3d 1312, 1313 [2017]; D.A. Bennett LLC v Cartz, 113 AD3d 945, 946 [2014]).
 

 In response to plaintiff’s cross motion to preclude consideration of the affidavits, defendants acknowledged that they did not disclose to plaintiff the identities of the three affiants— whose affidavits were submitted solely to interpret certain codes in plaintiff’s civil service employment records — prior to the filing of the note of issue and certificate of readiness. However, defendants’ counsel stated, in an affirmation, that the nondisclosure was “inadvertent” and the product of severe understaffing. Counsel further asserted that the documents that were the subject of the affidavits were disclosed to plaintiff roughly one year prior to the filing of the note of issue. Under these circumstances, Supreme Court found that there had been no showing of willfulness, and we decline to disturb the court’s determination to deny plaintiff’s cross motion to preclude the affidavits (see Armstrong v Armstrong, 72 AD3d 1409, 1410 [2010]; compare Boyer v Kamthan, 130 AD3d 1176, 1178-1179 [2015]).
 

 Next, plaintiff claims that CDPC and OMH engaged in an unlawful discriminatory practice by refusing to provide reasonable accommodations for his disabilities. Executive Law § 296 (3) (a) provides, in pertinent part, that “[i]t shall be an unlawful discriminatory practice for an employer ... to refuse to provide reasonable accommodations to the known disabilities . . . of an employee . . . in connection with a job or occupation . . . held.” A reasonable accommodation “is one which‘permitís] an employee . . . with a disability to perform in a reasonable manner the activities involved in the job’ and does not impose an ‘undue hardship’ on the employer’s business” (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 834 [2014], quoting Executive Law § 292 [21-e]; see Matter of County of Erie v New York State Div. of Human Rights, 122 AD3d 1303, 1304 [2014]). To establish a prima facie case of discrimination based upon the denial of a reasonable accommodation, the plaintiff must prove that he or she is a person with a disability, that the employer had notice of the disability, that he or she could perform the essential functions of the job with a reasonable accommodation and that the employer refused that reasonable accommodation (see Executive Law § 296 [3] [a]; Matter of County of Erie v New York State Div. of Human Rights, 121 AD3d 1564, 1565 [2014]; Matter of Abram v New York State Div. of Human Rights, 71 AD3d 1471, 1473 [2010]; Pimentel v Citibank, N.A., 29 AD3d 141, 148 [2006], lv denied 7 NY3d 707 [2006]; Pembroke v New York State Off. of Ct. Admin., 306 AD2d 185, 185 [2003]; cf. Rodal v Anesthesia Group of Onondaga, P.C., 369 F3d 113, 118 [2d Cir 2004]). An “employer normally cannot obtain summary judgment on [a denial of a reasonable accommodation claim] unless the record demonstrates that there is no triable issue of fact as to whether the employer duly considered the requested accommodation” by “engag[ing] in a good faith interactive process that assesse[d] the needs of the disabled individual and the reasonableness of the accommodation requested” (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 837 [internal quotation marks, brackets and citations omitted]).
 

 The record discloses two instances in which plaintiff requested a reasonable accommodation for his disabilities: the first being in January 2009 when Gorman and plaintiff discussed a transfer to unit H and the second being in the February 2009 letter from plaintiff’s counsel. Review of both of these requests reveals that at no point did CDPC refuse plaintiff’s reasonable accommodation requests.
 

 Plaintiff and Gorman’s January 2009 email exchange demonstrated that, after Gorman informed plaintiff of his transfer to unit H, plaintiff “decline [d]” the assignment on the basis that it “would be much . . . to[o] hard on a person with [his] disabilities.” Gorman replied that she was unaware of any disability that prevented plaintiff from performing the essential functions of his job on unit H and that, if he needed accommodations, he could request them through the human resources department. Plaintiff then stated, “With my disabilities [,] I would not be able to work unit H. I see this as a direct attempt to cause physical injury to an already pre existing [sic] condition. It would also interfere with my neurological deficit!,] which would cause more physical pain.” In response, Gorman asserted, “I am aware of some of your medical concerns [,] but do not know your full limitations. I know you have floated to [unit] H[,] so I am not sure what it is that you are unable to do. If you require reasonable accommodations[,] you must apply for this. You may request the forms in personnel. If you need any accommodations while we await the forms and medical documentation!,] please let me know what the specific needs may be.”
 

 In our view, Gorman’s response constituted an attempt to obtain more information regarding plaintiff’s specific needs and medical limitations so that she — and CDPC — could consider the feasibility of, and any potential burden imposed by, any reasonable accommodation requested by plaintiff (see Executive Law § 296 [3] [b]; Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 834-835). Indeed, the Human Rights Law requires an employee requesting a reasonable accommodation to “cooperate in providing medical or other information . . . that is necessary for consideration of the accommodation” (Executive Law § 296 [3] [c]; see Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d 1159, 1162 [2011]). Rather than cooperate with Gorman’s request for further information, plaintiff unreasonably stated, “If you can find some way to stop the laughter of the patients and prevent employee! ]s from star! ]ing on [unit] H while I’m in [T]ourette’s crisis!,] that would be a start. I also don’t think [you’re] being fair to these [p]atients[,] as it seems many of them recoil from my tic[ ]s when I am trying to care for them.” Plaintiff’s response failed to identify the specific work associated with unit H that he was unable to perform due to his medical limitations. Nor did plaintiff’s response differentiate between patients on unit H and those on other units. In short, it was plaintiff’s unreasonable accommodation requests and lack of meaningful response to Gorman’s request for further information that caused a breakdown in the interactive process (see Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1163-1164; Pimentel v Citibank, N.A., 29 AD3d at 148; Pembroke v New York State Off. of Ct. Admin., 306 AD2d at 185).
 

 With regard to plaintiff’s second accommodation request, defendants’ submissions unequivocally established that CDPC and OMH did not refuse plaintiff’s request to be assigned to either the crisis inpatient unit or unit M as a reasonable accommodation. In this regard, defendants submitted, among other things, the affidavit of Hernandez, in which he averred that he forwarded counsel’s letter to Gorman and directed her to investigate the feasibility of plaintiff’s assignment requests. Gorman’s response to this directive was memorialized in an email, which defendants submitted on their motion. In this email, Gorman engaged in a thorough and meaningful analysis of plaintiff’s assignment requests, concluding that “[t]he request to move to unit M [was] possible,” but that plaintiff would be required to float (i.e., cover) to other units. Gorman stated that, given plaintiff’s poor probationary evaluations, she had tried to assign plaintiff to a unit where he would be less likely to float and, therefore, subject to consistent supervision. She identified potential problems with plaintiff floating to unit H, including that the patients on that unit were “more physically involved” than other units. She also stated that she could request that plaintiff not be floated to unit H, but that she did not want to create a situation in which additional nurses were required to float to other units to accommodate this request. Finally, Gorman asserted that “the potential for patients on any unit to respond to [plaintiff’s] tics [was] present” and that the patients on unit H were no more or less likely to react.
 

 The exchange between Hernandez and Gorman demonstrated that plaintiff’s accommodation request — made by counsel — prompted CDPC to, as required, consider and assess plaintiffs request and any undue hardship it might pose to the operation of CDPC (see Executive Law § 296 [3] [b]; Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 834-835, 837; Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d at 1163). However, before CDPC could proceed any further with its internal inquiry, engage in any necessary dialogue with plaintiff and ultimately grant or deny plaintiff’s accommodation request (cf. Weaker v City of New York, 134 AD3d 474, 475 [2015]), CDPC discovered plaintiff’s undisclosed prior 14-year state employment at a similar facility and terminated his probationary employment on the basis that he “provid [ed] false information on [his] employment application.” Under these circumstances, plaintiff cannot prevail on his refusal of a reasonable accommodation claim (see Pimentel v Citibank, N.A., 29 AD3d at 149-150). Accordingly, Supreme Court properly granted so much of defendants’ motion as sought dismissal of plaintiff’s reasonable accommodation claim.
 

 As for plaintiff’s claim that defendants terminated his employment as retaliation for him requesting reasonable accommodations for his disabilities, Executive Law § 296 (7) states, in relevant part, that “[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under [article 15 of the Executive Law].” To state a prima facie case of retaliation under Executive Law § 296 (7), a plaintiff must establish that he or she was engaged in a protected activity, of which the defendant was aware, and that he or she suffered an adverse employment action as a result of engaging in the protected activity (see Forrest v Jewish Guild for the Blind, 3 NY3d 295, 312-313 [2004]; Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1189 [2015]; Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d 1464, 1466 [2011]). To rebut a prima facie case of retaliation, the defendant must demonstrate that there were “ legitimate, independent and nondiscriminatory reasons’ ” supporting its actions (Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d at 1467, quoting Pace v Ogden Servs. Corp., 257 AD2d 101, 104 [1999]; see Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d 1138, 1140 [2007], lv denied 10 NY3d 706 [2008]). If the defendant satisfies this burden, the burden then shifts to the plaintiff to establish that the defendant’s proffered reasons are pretextual (see Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d at 1467; Pace v Ogden Servs. Corp., 257 AD2d at 104).
 

 Assuming, without deciding, that plaintiff engaged in a protected activity by requesting reasonable accommodations (see Serdans v New York & Presbyt. Hosp., 112 AD3d 449, 450 [2013]; Witchard v Montefiore Med. Ctr., 103 AD3d 596, 596 [2013], lv denied 22 NY3d 854 [2013]; McKenzie v Meridian Capital Group, LLC, 35 AD3d 676, 677 [2006]; but see e.g. Weixel v Board of Educ. of City of New York, 287 F3d 138, 149 [2d Cir 2002]) and that he also established, prima facie, the remaining elements of a retaliation claim, we would nonetheless find that defendants satisfied their burden of demonstrating legitimate, independent and nondiscriminatory reasons for terminating plaintiffs employment. Indeed, in support of their motion for summary judgment dismissing the complaint, defendants proffered, among other things, the affidavits of Hernandez, Gorman and Anne Soldner — then Associate Personnel Administrator in the human resources department. Hernandez stated that he terminated plaintiff’s probationary employment because it was discovered that plaintiff withheld his prior 14-year state employment at a similar facility from his employment application. Hernandez explained that, upon receiving counsel’s February 2009 letter, he asked the Director of Human Resources to ascertain whether CDPC had received a Civil Service Law §§ 55-b and/or 55-c notice from plaintiff or whether such notice was contained in plaintiff’s personnel file or employment history. Hernandez asserted that he was thereafter informed that Soldner had discovered that plaintiff had been previously employed at a similar state facility and had been suspended and later terminated from that position. According to Hernandez, because CDPC and the other state facility were “very similar,” hiring someone who had been discharged from a similar setting put patients at risk. Finally, Hernandez asserted that he could not recall “a single instance at CDPC in which an employee who ha[d] falsified his or her employment application was not terminated.”
 

 In her affidavit, Soldner asserted that she pulled plaintiff’s civil service employment history and saw entries noting that plaintiff had been disciplined several times while employed in a prior state position and was ultimately terminated from that position. Soldner also stated that plaintiff had indicated on his civil service application that he had never left employment for any reason other than a lack of work or funds, disability or a medical condition. Plaintiff’s résumé, civil service application and OMH application — all of which were submitted on defendants’ motion — confirmed that plaintiff did not affirmatively disclose his prior state employment position.
 
 [2]
 
 Further, Gorman stated that she would not have hired plaintiff if she had been aware of his employment history. Gorman asserted that, from her understanding of past practice, it was CDPC’s policy to immediately terminate a probationary employee if it was determined that the employee was not truthful on his or her application. By showing, through the foregoing evidence, that plaintiff’s termination was based on his failure to disclose his prior 14-year state employment at a similar facility and that CDPC had a good faith basis for believing that plaintiff had been suspended and, later, terminated from that position, defendants demonstrated that they had legitimate, independent and nondiscriminatory reasons for terminating plaintiff’s probationary employment (see Godbolt v Verizon N.Y. Inc., 115 AD3d 493, 494 [2014], lv denied 24 NY3d 901 [2014]; Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d at 1467).
 

 In opposition to defendants’ motion, plaintiff failed to raise a triable issue of fact as to whether defendants’ reasons for terminating plaintiff’s probationary employment were pretex-tual. Plaintiff does not dispute that he was previously employed at a similar state facility and that he did not affirmatively disclose that employment on his résumé, civil service application or OMH application. Rather, plaintiff contests CDPC’s interpretation of his civil service employment history, stating that his departure was actually a voluntary separation, not a termination. However, contesting the precise circumstances of his departure from prior state service does not create a question of fact on the issue of pretext, for it matters not why or how he left, but whether CDPC had a good faith basis to believe that he had been fired from his prior state position (see Forrest v Jewish Guild for the Blind, 3 NY3d at 308 n 5; Miranda v ESA Hudson Val., Inc., 124 AD3d 1158, 1161-1162 [2015]; Kelderhouse v St. Cabrini Home, 259 AD2d 938, 939 [1999]; Miano v Caterpillar Tractor Co., 184 AD2d 807, 808 [1992]). Plaintiff failed to demonstrate that CDPC’s belief in this regard was not held in good faith. Furthermore, the relatively short amount of time between counsel’s February 24, 2009 letter formally requesting a reasonable accommodation and plaintiff’s March 17, 2009 termination is insufficient, standing alone, to raise a triable issue of fact, as plaintiff cannot “merely point [ ] to the inference of causality resulting from the sequence in time of the events” (Forrest v Jewish Guild for the Blind, 3 NY3d at 313; accord Suriel v Dominican Republic Educ. & Mentoring Project, Inc., 85 AD3d at 1467). Accordingly, as plaintiff failed to satisfy his burden of demonstrating that defendants’ reasons for terminating his employment were pretextual, Supreme Court properly dismissed his retaliation claim.
 

 Supreme Court also properly dismissed plaintiff’s claim that Hernandez and Gorman violated Executive Law § 296 (6), which, as relevant here, makes it “an unlawful discriminatory practice for any person to aid [or] abet . . . the doing of any of the acts forbidden under [article 15 of the Executive Law], or to attempt to do so.” Given that plaintiffs independent Human Rights Law claims were properly dismissed, his Executive Law § 296 (6) claim against Hernandez and Gorman for aiding and abetting fails (see Kelly G. v Board of Educ. of City of Yonkers, 99 AD3d 756, 758-759 [2012]; Matter of Medical Express Ambulance Corp. v Kirkland, 79 AD3d 886, 888 [2010], lv denied 17 NY3d 716 [2011]; Barboto v Bowden, 63 AD3d 1580, 1582 [2009]; Strauss v New York State Dept. of Educ., 26 AD3d 67, 73 [2005]). We further find that Supreme Court properly dismissed plaintiff’s equal protection claim (see generally Transportation Unlimited Car Serv., Inc. v New York City Taxi & Limousine Commn., 11 AD3d 384, 385 [2004]; Garcia v S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F3d 98, 109 [2d Cir 2001]).
 

 Plaintiff’s remaining contentions are either unpreserved or have been examined and determined to lack merit.
 

 McCarthy, J.P., Lynch, Aarons and Pritzker, JJ., concur.
 

 Ordered that the order is affirmed, without costs.
 

 [1]
 

 . Although argued in plaintiff’s appellate brief and seemingly addressed in Supreme Court’s order, plaintiff did not assert, in his complaint, a claim for disability discrimination pursuant to Executive Law § 296 (1) (a). Accordingly, any such claim is unpreserved (see Matter of Tomarken v State of New York, 100 AD3d 1072, 1076 [2012]; Higgs v County of Essex, 232 AD2d 815, 817-818 [1996]).
 

 [2]
 

 . On his OMH application, plaintiff did check boxes indicating that he was previously employed by the state and that he had been discharged from employment for a reason other than a lack of work or funds, disability or a medical condition. However, Soldner asserted that this application was filled out on plaintiffs first day and was immediately filed in his employee’s personnel file, without review. Moreover, plaintiff did not specifically list the prior state position in the “employment history” section of the OMH application.