Cain v North Country Community Coll.
2026 NY Slip Op 03340
May 28, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Precious Cain, Respondent,
v
North Country Community College et al., Appellants.

Decided and Entered:May 28, 2026
CV-24-1849
Calendar Date: March 26, 2026
Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Sugarman Law Firm, LLP, Syracuse (Adam P. Carey of counsel), for North Country Community College and another, appellants.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for New York State Department of Corrections and Community Supervision and another, appellants.
Finn Law Offices, Albany (Ryan M. Finn of counsel), for respondent.

[*1]
Aarons, J.P.
Appeals (1) from an order of the Supreme Court (Peter Lynch, J.), entered October 17, 2024 in Albany County, which denied a motion by defendants Department of Corrections and Community Supervision and Victoria Barber to dismiss the complaint, and (2) from an order of said court, entered October 23, 2024 in Albany County, which denied defendants' motions for summary judgment dismissing the complaint and cross-claims.
Plaintiff, an African-American woman, began working for defendant North Country Community College (hereinafter NCCC) in August 2018 as an adjunct instructor, teaching one business course for the fall 2018 semester. As part of her employment, plaintiff also served as an instructor for the federally funded Second Chance Pell Program providing college-level courses to incarcerated individuals. For the spring 2019 semester, plaintiff taught two courses at NCCC and two courses at Franklin Correctional Facility (hereinafter Franklin CF). Plaintiff resigned from the Second Chance Pell Program and NCCC in July 2019 and January 2020, respectively, following a "series of incidents" which, she claimed, made her working conditions intolerable. These incidents included plaintiff's non-selection for a full-time business instructor position despite her "superior qualifications"; alleged sexual harassment by correction officers during the spring 2019 semester; a June 2019 email inquiry from defendant Victoria Barber, the deputy superintendent of Franklin CF, in which plaintiff claims she was "wrongfully accused of theft and sabotaging a co-worker's desk" after a classroom was found in "disarray"; an incident in July 2019 during which Barber denied plaintiff's entry into Franklin CF based upon plaintiff's hand tremor; a reduction in her NCCC course load from nine credits to zero and her assignment to a tutoring center; and NCCC's alleged provision of false information to the state Department of Labor, resulting in the denial of unemployment benefits during the summer of 2019.FN1
In February 2022, plaintiff commenced this action against NCCC and defendant Tara Evans,FN2 the human resources director at NCCC (hereinafter collectively referred to as the college defendants), as well as defendant Department of Corrections and Community Supervision (hereinafter DOCCS) and Barber (hereinafter collectively referred to as the state defendants), asserting causes of action for racial discrimination, gender discrimination, hostile work environment, constructive discharge and retaliation under the Human Rights Law and requesting punitive damages, among other things.FN3 The state defendants moved to dismiss the complaint, which motion Supreme Court denied. Following discovery, the state defendants and the college defendants moved, separately, for summary judgment dismissing the complaint in its entirety. Supreme Court denied the motions, concluding that "the record depicts a series of escalating events" that, taken together, could lead a reasonable jury to conclude that [*2]defendants violated the Human Rights Law. Defendants appeal.
As a threshold matter, we agree with the state defendants that Supreme Court erred in applying the present version of Executive Law § 296-d to plaintiff's claims. Though the present version expands employer liability from sexual harassment of non-employees to any "unlawful discrimination against non-employees in its workplace" (L 2019, ch 160, § 4), that expansion is applicable only to claims that accrued on or after October 11, 2019 — several months after the incidents giving rise to this action occurred (see L 2019, ch 161, § 4 [d]).
That said, Supreme Court properly denied the state defendants' motion to dismiss the complaint against them on the assertion that they were not plaintiff's employer (see CPLR 3211 [a] [7]). When determining who is an employer under the Human Rights Law, the key inquiry is "the alleged employer's power to order and control the employee in his or her performance of work" (Griffin v Sirva, Inc., 29 NY3d 174, 186 [2017] [internal quotation marks and citation omitted]). In her complaint, plaintiff asserted that she worked in DOCCS facilities, that her entry and movement in such facilities was controlled by DOCCS and that DOCCS reduced her course load in retaliation for her complaints about discrimination. Liberally construed and accepted as true, and according plaintiff the benefit of every favorable inference, the complaint sufficiently alleged facts from which to conclude that DOCCS and NCCC, together,FN4 were plaintiff's employer under the Human Rights Law, rendering dismissal of her claims inappropriate (see Cagino v Levine, 199 AD3d 1103, 1104 [3d Dept 2021] [internal quotation marks and citation omitted]; Carr v Wegmans Food Mkts., Inc., 182 AD3d 667, 669 [3d Dept 2020]; Zheng v Liberty Apparel Co. Inc., 355 F3d 61, 72 [2d Cir 2003]).
Turning to the summary judgment motions, and viewing the evidence in the light most favorable to plaintiff as nonmovant, the state defendants failed to establish entitlement to judgment as a matter of law dismissing the complaint on the ground that DOCCS was not plaintiff's employer (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Though there is no evidence that the state defendants had authority over plaintiff's hiring, compensation and other indicia of an employer-employee relationship, the evidence showed that the state defendants exercised a significant degree of control and supervision over her work. In particular, the record shows that correction officers monitored plaintiff's classroom, that the state defendants controlled her access to Franklin CF and on one occasion Barber collected the assignment plaintiff was to distribute and barred her from teaching that day. Accordingly, summary dismissal of the complaint against the state defendants on this ground was unwarranted (see generally Griffin v Sirva, Inc., 29 NY3d at 186).
We turn now to the substance of plaintiff's claims, starting with discrimination[*3]. To establish a claim for race or gender discrimination, "plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 305 [2004]). "To prevail on [their] summary judgment motion[s], defendant[s] must demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for [their] challenged actions, the absence of a material issue of fact as to whether [their] explanations were pretextual" (White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d 1230, 1231 [3d Dept 2023] [internal quotation marks and citations omitted]; see Kelderhouse v St. Cabrini Home, 259 AD2d 938, 939 [3d Dept 1999]).
None of the incidents of alleged discrimination survive defendants' motions. Initially, there is no dispute that plaintiff is a member of protected classes and that she was qualified to be an adjunct instructor. As for plaintiff's claim of gender and/or racial discrimination in the selection of a full-time business instructor, there is also no dispute that plaintiff met the minimum qualifications for that role when she submitted her application in January 2019, that plaintiff did not receive an interview and that the two open positions eventually went to two white males. Even assuming an inference of discrimination attaches to the college defendants' failure to hire her for one of those positions, Kim Irland, a member of NCCC's search committee, explained in an affidavit that, while plaintiff had the minimal qualifications, the two successful candidates had considerably more teaching experience — a desired quality listed in the job description for the full-time business instructor position. Thus, the college defendants supplied legitimate, nondiscriminatory reasons for passing over plaintiff. Plaintiff did not dispute that the successful candidates had more teaching experience, and she failed to raise a material issue of fact through her testimony that the successful candidates' materials had typing errors, included "opinion" pieces under publications or listed retail jobs under work experience (see Wozniak v Components Assembly Div., 220 AD2d 934, 935 [3d Dept 1995]).
To the extent plaintiff's intentional discrimination claim is based upon Barber's email regarding a classroom left in disarray, the email itself does not constitute an adverse employment action, which "requires a materially adverse change in the terms and conditions of employment" including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [or] significantly diminished material responsibilities" ([*4]Forrest v Jewish Guild for the Blind, 3 NY3dat 306 [internal quotation marks and citations omitted]; see Golston-Green v City of New York, 184 AD3d 24, 37 [2d Dept 2020]). As to the incident in which Barber refused plaintiff entry to Franklin CF, Barber denied plaintiff's allegation that she yelled at plaintiff, or accused her of alcohol use and reported said alcohol use to others as alleged by plaintiff. Instead, Barber affirmed that plaintiff was denied entry into the prison because plaintiff admitted she had not taken her medication, was nonverbal and was "visibly shaking," which Barber believed to be a safety and security issue, thereby providing a legitimate, nondiscriminatory reason for her actions (see White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d at 1231). In opposition, plaintiff was required to submit proof raising an issue of fact as to whether "the stated reasons were false and that discrimination was the real reason" (Baldwin v Cablevision Sys. Corp., 65 AD3d 961, 965 [1st Dept 2009] [internal quotation marks and citation omitted], lv denied 14 NY3d 701 [2010]). Plaintiff failed to do so, as she confirmed that she had neglected to take medication for a hand tremor she had recently developed, and her testimony that Barber's alleged accusations of alcohol intoxication were motivated by plaintiff's race, gender or both were conclusory and thus insufficient to meet her shifted burden (see Forrest v Jewish Guild for the Blind, 3 NY3d at 308 n 6; Wozniak v Components Assembly Div., 220 AD2d at 935).
Next, defendants seek summary judgment dismissing plaintiff's claims of a sexually hostile work environment and a race-based hostile work environment. To establish such claims, a plaintiff "must offer proof of a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment" (Mikesh v County of Ulster, 237 AD3d 1285, 1288-1289 [3d Dept 2025] [internal quotation marks and citations omitted]). Under the existing law at the time of accrual, "[t]he acts alleged to be discriminatory must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" (White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d at 1231-1232 [internal quotation marks and citations omitted]; accord Mikesh v County of Ulster, 237 AD3d at 1289).
As to a hostile work environment due to sexual harassment, defendants met their initial summary judgment burden demonstrating that the conduct was not severe or pervasive. Plaintiff testified to "egregious" incidents by three different correction officers over a six-month period. According to plaintiff, one unnamed correction officer at Franklin CF would "take . . . every opportunity he had to be alone" with her and "tell [her] how hot [she] was." He told plaintiff that she "had to be careful [*5]around" the incarcerated individuals because "they were nasty guys," but that she "didn't have to worry because he would just . . . whip his c**k out at them." Another correction officer "would always insist on" escorting plaintiff to and from the classroom, and would "joke" that plaintiff was "really hot and you never know what might happen to . . . somebody sexy walking by themselves . . . at nighttime." A third unnamed correction officer informed plaintiff after class that the incarcerated individuals were looking at her backside while she had her back turned writing on the board, and the officer demonstrated plaintiff's movements to illustrate what the individuals saw. Although this alleged conduct was unquestionably inappropriate, these alleged incidents were insufficient as a matter of law to create an actionable sexually hostile or abusive work environment (see Vitale v Rosina Food Prods., 283 AD2d 141, 148 [4th Dept 2001]; compare Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1188-1189 [3d Dept 2015]).
Plaintiff's further testimony that DOCCS staff "routinely made sexually inappropriate comments" and that unspecified comments about her appearance began "[a]lmost as soon as she started working in the prison[s]" does not alter the analysis. In this connection, "the workplace must be both subjectively and objectively hostile. That is, a plaintiff must not only perceive that the conditions of his or her employment were altered because of discriminatory conduct, but the conduct also must have created an environment that a reasonable person would find to be hostile or abusive" (Pawson v Ross, 137 AD3d 1536, 1537 [3d Dept 2016]; see Reynolds v State of New York, 180 AD3d 1116, 1117-1118 [3d Dept 2020]). Thus, there must be evidence of discriminatory, harassing or demeaning conduct for the jury to assess; in our view, the generalizations and subjective characterizations to which plaintiff testified would not permit a jury to find that plaintiff's workplace was objectively hostile (cf. Lefort v Kingsbrook Jewish Med. Ctr., 203 AD3d 708, 712 [2d Dept 2022]).
To the extent plaintiff asserted a racially hostile work environment claim (see generally Forrest v Jewish Guild for the Blind, 3 NY3d at 310), such claim also should have been dismissed. Initially, defendants' evidence established that no employee uttered racially charged remarks or otherwise harassed or demeaned plaintiff based upon her race. Barber sent to plaintiff and others an email regarding a classroom left in disarray and inquired as to whether plaintiff had been issued keys to the classroom, why a file cabinet therein would be unlocked and whether the cabinet contained "anything confidential or of security concern." Notably, Barber did not specifically accuse plaintiff of theft, but instead directed the recipients to interview the incarcerated individuals in plaintiff's class. Further, defendants' proof demonstrated that plaintiff was sent that email because she was the last [*6]instructor to use that classroom. Even assuming that Barber's actions in sending the email and, on a different date, barring plaintiff from teaching in the facility one day were motivated by racial stereotypes, plaintiff cannot establish that such alleged discriminatory conduct was so severe or pervasive as to support a racially hostile work environment claim (see id.; Clauberg v State of New York, 95 AD3d 1385, 1388 [3d Dept 2012]).
As to the retaliation claim, defendants seeking summary judgment must either conclusively refute a plaintiff's prima facie claim that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action" (Forrest v Jewish Guild for the Blind, 3 NY3d at 312-313; see Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights, 41 NY3d 326, 331 [2024]), or provide legitimate, non-pretextual reasons for the alleged retaliatory conduct (see Graham v New York State Off. of Mental Health, 154 AD3d 1214, 1221 [3d Dept 2017]). Protesting discrimination, whether formally or informally, constitutes protected activity (see Executive Law § 296 [7]).
Here, the record establishes, and defendants cannot seriously dispute, that plaintiff engaged in protected activity by reporting alleged racial discrimination by Barber to her supervisor at NCCC and alleged sexual harassment to a colleague who subsequently reported it to NCCC (see Albunio v City of New York, 16 NY3d 472, 479 [2011]). Viewed in the light most favorable to plaintiff, the record also shows that defendants were aware that plaintiff had voiced concern about discrimination and sexual harassment at Franklin CF, and it was only then that plaintiff began experiencing alleged retaliatory conduct. Some of that conduct — Barber's email regarding the state of the classroom assigned to plaintiff and Barber's denial of her entry to Franklin CF — did not qualify as an adverse employment consequence or came with unrebutted legitimate nondiscriminatory explanations, as discussed above. As to the reduction in plaintiff's fall 2019 course assignments and the college defendants' submission of allegedly false information to the Department of Labor in July 2019, these actions were adverse and so close in time to plaintiff's reports of discrimination and harassment as to not foreclose the possibility of a causal connection (compare Koester v New York Blood Ctr., 55 AD3d 447, 449 [1st Dept 2008]).
Defendants nevertheless established entitlement to dismissal of the retaliation claims as a matter of law through evidence of legitimate, nondiscriminatory and non-pretextual reasons for their conduct (see Graham v New York State Off. of Mental Health, 154 AD3d at 1221). Evans clarified that plaintiff's classes were cancelled due to low enrollment and that NCCC was contractually obligated [*7]to prioritize full-time faculty in the assignment of courses. The record confirms that plaintiff was aware of NCCC's policy and informed that her classes were cancelled pursuant to that policy. As to plaintiff's claim respecting her unemployment benefits application in July 2019, plaintiff informed the Department of Labor that she separated from employment for lack of work. Defendants' proof, however, established that plaintiff had been assigned to teach courses in the Second Chance program for the summer 2019 term, that plaintiff had resigned from her instructor position for the summer, and that the college defendants supplied documents to the Department of Labor so indicating. The burden thus shifted to plaintiff to submit proof raising an issue of fact as to whether defendants' proffered reasons were false and pretextual, which plaintiff failed to do (see Brightman v Prison Health Serv., Inc., 108 AD3d 739, 741 [2d Dept 2013]; Pace v Ogden Servs. Corp., 257 AD2d 101, 104-105 [3d Dept 1999]; see also Clauberg v State of New York, 95 AD3d at 1387 [retaliatory hostile work environment]).
In light of the foregoing, plaintiff's constructive discharge claim — which requires a showing that "an employer deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign" — must be dismissed (White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d at 1232 [internal quotation marks and citations omitted]). Plaintiff's aiding-and-abetting claims against the individual defendants must be dismissed as well (see Graham v New York State Off. of Mental Health, 154 AD3d at 1223). Defendants' remaining contentions are academic.FN5
Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the order entered October 17, 2024 is affirmed, without costs.
ORDERED that the order entered October 23, 2024 is reversed, without costs, and complaint dismissed.

Footnotes

Footnote 1
The determination that plaintiff was disqualified from receiving unemployment benefits was reversed in December 2019 by the Unemployment Insurance Appeal Board.

Footnote 2
Evans is named in the action by her maiden name, Tara Smith.

Footnote 3
Plaintiff previously commenced an action in federal court, asserting violations of both state and federal law. The court dismissed the federal claims and declined to exercise supplemental jurisdiction over the state claims, leading to this action.

Footnote 4
There is no dispute that NCCC was plaintiff's employer.

Footnote 5
Although academic, we note that the college defendants would have been entitled to summary judgment on plaintiff's claim for punitive damages under the law applicable at the time of the alleged conduct (see Executive Law § 297 [former (9)]; Thoreson v Penthouse Intern., Ltd., 80 NY2d 490, 498-499 [1992]; Moccio v Fits Systems, Inc., 25 AD3d 439, 440 [1st Dept 2006]).