White-Barnes v New York State Dept. of Corr. & Community Supervision (2023 NY Slip Op 01561)

White-Barnes v New York State Dept. of Corr. & Community Supervision

2023 NY Slip Op 01561

Decided on March 23, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 23, 2023

535384
[*1]Pauline White-Barnes, Appellant,
v
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date:January 18, 2023

Before:Egan Jr., J.P., Lynch, Aarons, Ceresia and Fisher, JJ.

Halsband Law Offices, Hackensack, New Jersey (David S. Halsband of counsel) and Maclean Law, PC, White Plains (Alexander Maclean Jeffrey Jr. of counsel), for appellant.
Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (Christina L. Ryba, J.), entered April 8, 2022 in Albany County, which granted defendant's motion for summary judgment dismissing the amended complaint.
Plaintiff, then 61 years old, was hired by defendant in 2017 and began training as a correction officer trainee at defendant's academy. According to plaintiff, she was subjected to harassment and age discrimination during the first two days of her employment and was forced to resign. Plaintiff commenced this action asserting, as relevant here, that defendant violated the Human Rights Law (see Executive Law § 290 et seq.) by creating and subjecting her to a hostile work environment so extreme that it led to her constructive discharge. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the amended complaint. Supreme Court granted the motion, finding that, when the alleged conduct was "[v]iewed against the backdrop of the correctional environment in which plaintiff was employed, . . . the relatively benign treatment experienced by plaintiff during the extremely short period of her employment cannot be deemed to have permeated the workplace with discriminatory ridicule so severe and intolerable that the terms of plaintiff's employment were altered, or that a reasonable person in her position would have felt compelled to resign." Plaintiff appeals.[FN1]
The function of the court in deciding a motion for summary judgment is issue finding, rather than issue determination (see Matter of Walter Q. v Stephanie R., 201 AD3d 1142, 1145 [3d Dept 2022]; Hall v Queensbury Union Free Sch. Dist., 147 AD3d 1249, 1250 [3d Dept 2017]). "To prevail on its summary judgment motion, defendant must demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for its challenged actions, the absence of a material issue of fact as to whether its explanations were pretextual" (Grovesteen v New York State Pub. Employees Fedn., AFL-CIO, 83 AD3d 1332, 1333 [3d Dept 2011] [internal quotation marks, brackets and citation omitted], lv denied 17 NY3d 707 [2011]). In order to establish the existence of a hostile work environment, a plaintiff must establish that his or her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004] [internal quotation marks, brackets, and citation omitted]; see Mahoney v City of Albany, 211 AD3d 1408, 1410 [3d Dept 2022]). The acts alleged to be discriminatory "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" (Mahoney v City of Albany, 211 AD3d at 1410 [internal quotation marks and citations omitted]). In evaluating such claim, "a court must consider [*2]all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with the plaintiff's work performance" (Long v Aerotek, Inc., 202 AD3d 1216, 1218 [3d Dept 2022] [internal quotation marks and citation omitted]). "Moreover, the workplace must be both subjectively and objectively hostile" (Pawson v Ross, 137 AD3d 1536, 1537 [3d Dept 2016]; see Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1187 [3d Dept 2015]).
Relevantly, "[a]n employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it" (Reynolds v State of New York, 180 AD3d 1116, 1118 [3d Dept 2020] [internal quotation marks and citations omitted]; see Forrest v Jewish Guild for the Blind, 3 NY3d at 311). However, "[a]n employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation" (Reynolds v State of New York, 180 AD3d at 1118 [internal quotation marks and citations omitted]; see Doe v New York City Police Dept., 190 AD3d 411, 412 [1st Dept 2021]; Tidball v Schenectady City Sch. Dist., 122 AD3d 1131, 1132 [3d Dept 2014]). Although an employer may "disprove condonation by a showing that it reasonably investigated complaints of discriminatory conduct and took corrective action" (Reynolds v State of New York, 180 AD3d at 1118 [internal quotation marks and citation omitted]), a constructive discharge is established when an employer "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign" (Crookendale v New York City Health & Hosps. Corp., 175 AD3d 1132, 1132 [1st Dept 2019] [internal quotation marks and citation omitted]; see Matter of Price v Southwest Airlines, Inc., 66 AD3d 1267, 1270 [3d Dept 2009], lv dismissed 14 NY3d 858 [2010]).
Even accepting, arguendo, that defendant met its threshold burden demonstrating that the challenged conduct had a nondiscriminatory basis and, in any event, could not be imputed to defendant, plaintiff raised a triable question of fact as to defendant's responsibility for subjecting her to a hostile work environment (see Gregorian v New York Life Ins. Co., 211 AD3d 711, 713 [2d Dept 2022]). According to plaintiff, during her initial lineup a drill sergeant called her out of line, asked for her age and then said "God bless you" in front of the other trainees. From there, plaintiff testified that she immediately became known as "grandma" by the other trainees, correction officers or staff, being called "grandma" continuously and "[e]ach time we had to go to a different drill"; this included comments such as "walk up grandma," "keep up grandma" and "move faster, grandma." When the trainees were given a break that night, plaintiff testified that three female officers from [*3]a previous trainee class came to her room to ask if she was really in her sixties and why she applied for a correction officer job at her age. Plaintiff testified that she realized her nickname "was spreading like wildfire in the academy."
Plaintiff testified that, at the start of the second day of training, her class was walking into the auditorium when an officer jumped out in front of her and yelled, "what the F did they let loose on us? Are they effing crazy?" and the group around her had "a good laugh." Plaintiff testified that she became "depressed" about the comments and she then notified a female administrative sergeant, who plaintiff alleges had been present both days and witnessed the "grandma" comments, that she was resigning. Although the female administrative sergeant did not recall the incident or observe inappropriate language used by correction officers at the academy toward trainees, she testified that it was "possibly" her who handled plaintiff's resignation papers. In reviewing the allegations of this action, the administrative sergeant admitted that she was "shocked" and found it "sad" if the discrimination did occur — she further testified that the alleged conduct would have been a violation of defendant's age discrimination policy. This admission was echoed by other witnesses from defendant, who also did not recall the specific allegations.
Even though plaintiff admitted that she was prepared for the intensive, para-military nature of an academy, she testified that she was not prepared for the humiliation based on the discriminatory conduct that was "singling [her] out by [her] age." Despite that many of defendant's witnesses — including the drill sergeant — did not have a recollection of the alleged discriminatory conduct, the Equal Employment Opportunity Commission still had determined that there was reasonable cause to believe that defendant discriminated against plaintiff; such finding, although not dispositive, is some evidence of discrimination (see Short v Deutsche Bank Sec., Inc., 79 AD3d 503, 504 [1st Dept 2010]). Given that the conduct spread beyond staff and plaintiff's trainee class, but also to members of a previous class, further demonstrates the pervasive nature of the alleged discriminatory conduct — particularly in such a short period before plaintiff's resignation. Accordingly, based on the foregoing, particularly plaintiff's account of the drill sergeant's conduct and the candid admissions by the administrative sergeant as to the objective nature of the comments being discriminatory (see Reynolds v State of New York, 180 AD3d at 1119; compare Minckler v United Parcel Serv., Inc., 132 AD3d at 1188), we are satisfied that this proof, when viewed in a light most favorable to plaintiff, is sufficient to survive summary judgment and warrant a trial on plaintiff's hostile work environment claim (see Mahoney v City of Albany, 211 AD3d at 1412; Long v Aerotek, Inc., 202 AD3d at 1220; Godino v Premier Salons, Ltd[*4]., 140 AD3d 1118, 1119-1120 [2d Dept 2016]).
Similarly, we are further satisfied that the inaction in the record by defendant's staff, combined with the allegations that supervisors had knowledge of the conduct but ignored it (see Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights, 53 AD3d 823, 825 [3d Dept 2008]; see also Reynolds v State of New York, 180 AD3d at 1118; Matter of Wal-Mart Stores E., L.P. v New York State Div. of Human Rights, 71 AD3d 1452, 1453 [4th Dept 2010]), also raises a triable question of fact regarding whether plaintiff's resignation was prompted by working conditions that were so intolerable, difficult or unpleasant and condoned by defendant (see Long v Aerotek, Inc., 202 AD3d at 1222). We have examined the parties' remaining claims and have found them to be unavailing or rendered academic.
Egan Jr., J.P., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion for summary judgment to the extent of dismissing plaintiff's fourth and sixth causes of action; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiff is only challenging the award of summary judgment as to her fourth (hostile work environment) and sixth (constructive discharge) causes of action.