Mikesh v County of Ulster (2025 NY Slip Op 01987)

Mikesh v County of Ulster

2025 NY Slip Op 01987

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CV-23-2185
[*1]Heather Mikesh, Appellant,
v
County of Ulster et al., Respondents.

Calendar Date:February 20, 2025

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and McShan, JJ.

Belluck & Fox, LLP, New York City (Michael A. Macrides of counsel), for appellant.
Roemer Wallens Gold & Mineaux LLP, Albany (Benjamin D. Heffley of counsel), for respondents.

Fisher, J.
Appeal from an order of the Supreme Court (David Gandin, J.), entered October 26, 2023 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint.
In June 2018, plaintiff started working for defendant County of Ulster as a principal account clerk in the finance department, where she was supervised by defendant Wendy Trojak. According to plaintiff, once she completed her six months of training, Trojak began to bully her in front of other coworkers "every single day" by yelling at her and undermining her work product in a "heavy," sarcastic and angry tone. She reported the conduct to the two deputy commissioners, who advised there was "nothing" they could do about it. In August 2020, plaintiff was promoted by defendant Burt Gulnick Jr., the finance commissioner for the County, to serve as his confidential secretary. Plaintiff contends that Trojak's bullying escalated to ridicule of her personal appearance, which included harassment from another coworker who joined Trojak in pointing and laughing at plaintiff's hair and makeup or claiming that she looked "sick" on occasion. Following several complaints to Gulnick and staff in the personnel department, and after two mediations with a third-party mediator, Gulnick terminated plaintiff as confidential secretary and demoted her to a lower-paying position in another department, ultimately resulting in her separation from employment with the County in April 2021.
Plaintiff then commenced this action, asserting causes of action for gender discrimination and retaliation against all defendants and a hostile work environment against Gulnick and Trojak under the Human Rights Law. Specifically, plaintiff alleged that Gulnick refused to address the rampant harassment because of his sexist beliefs about women in the workplace. She claimed that Gulnick was dismissive of her complaints and labeled them as a "she-said-she-said" situation, which is why he would "rather work with 30 men in a department any day over women," and advised plaintiff to go on a walk with Trojak or "go to the basement and hash it out." According to plaintiff, Gulnick would "often" make similar comments such as "women were too vocal, the women in the office had big personalities, and that there were too many women in his department," and that he characterized the conflict between plaintiff and Trojak to one of his deputy commissioners as just "women being nasty." Plaintiff further alleged that, when she advised the personnel department of the situation and participated in two mediations with a third-party mediator, Gulnick became enraged with her and claimed that she had breached his confidences regarding discussions that had taken place in his office, including the promotion of another coworker with whom it was rumored he was having an affair. Plaintiff asserts that this reason was pretextual, and as a result she suffered an adverse employment action and retaliation when he terminated her as his confidential [*2]secretary and reassigned her to a role that would ultimately report to Trojak — a position plaintiff refused to accept, so she resigned from her employment with the County. Following the completion of disclosure, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion, finding that plaintiff failed to establish a prima facie case on all causes of action. Plaintiff appeals.
We reverse. To establish a claim for gender discrimination under the Human Rights Law, a plaintiff must "show (1) that he or she was a member of a protected class, (2) that he or she suffered an adverse employment action, (3) that he or she was qualified to hold the position for which he or she suffered the adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination" (Cagino v Levine, 199 AD3d 1103, 1104 [3d Dept 2021] [internal quotation marks, ellipses and citation omitted]). "Verbal comments can serve as evidence of discriminatory motivation when a plaintiff shows a nexus between the discriminatory remarks and the employment action at issue" (Chiara v Town of New Castle, 126 AD3d 111, 124 [2d Dept 2015] [citations omitted], lv dismissed 26 NY3d 945 [2015]). "Employers are . . . required to provide reasonable avenues for discrimination and harassment complaints, to respond appropriately to such complaints, and to take reasonable steps to eliminate the harmful conduct; where they fail to do so, they are subject to liability under [the Human Rights Law]" (Russell v New York Univ., 42 NY3d 377, 389 [2024] [citations omitted]).
There is no dispute that plaintiff is a member of a protected class and was qualified to hold the position from which she was demoted, which demotion ultimately caused her to resign. Contrary to defendants' contention, plaintiff's demotion and decrease in wages were adverse employment actions (see Forrest v Jewish Guild for the Blind, 3 NY3d 295, 306 [2004]; James v City of New York, 144 AD3d 466, 467 [1st Dept 2016]). Therefore, whether plaintiff's demotion was due to gender-based discrimination turns on whether it occurred under circumstances giving rise to an inference of discrimination. We think a reasonable jury could have concluded that it did. The gravamen of plaintiff's allegations is that Gulnick's sexist views toward women fostered a workplace where women's legitimate grievances were met with dismissal and ridicule, and conflicts that would otherwise have been dealt with were instead allowed to fester. When plaintiff sought to have her valid claims of harassment addressed in-house and ultimately in an outside mediation, Gulnick's rebuke of her efforts envenomed with discriminatory commentary turned to anger, ultimately leading to plaintiff's demotion and decrease in wages.
The record supports this conclusion in several ways. As principal account clerk, plaintiff reported Trojak's initial bullying to the deputy commissioners[*3], who acknowledged there was "nothing" that could be done because Gulnick refused to address it. Plaintiff testified that Gulnick even acknowledged this, telling her that Trojak had done this before to two other principal account clerks — both women — and that this was "just the way she is." After plaintiff was promoted and raised several complaints to Gulnick, such concerns were informally handled without any abatement in Trojak's constant harassment. When plaintiff reiterated her concerns, it only uncloaked Gulnick's discriminatory motives for his inaction, namely preferring to work with men over women — which he admitted at his deposition to "joking[ ]" about when plaintiff was in his office crying — and that the entire dispute was "women being dramatic" and that it was "always the women with big personalities, too many women." After Gulnick failed to take reasonable steps to eliminate Trojak's caustic and undermining behavior — which had victimized two others before plaintiff and led to issues with plaintiff's ability to perform her job duties and resulted in a nearly $1 million mistake by Trojak — it was not until plaintiff threatened to contact the personnel office that Gulnick acquiesced in formally handling her complaints. In doing so, Gulnick's views toward women and discriminatory motives were now exposed to an outside party, where the mediator ultimately learned of the prolonged conflict involving Trojak, Gulnick's inaction and the fractured environment within the office due to this lack of action and control by Gulnick. The mediator also learned of Gulnick's alleged affair with a coworker, who had been promoted despite her poor work performance, excessive use of overtime and an office-wide concern over favoritism. Despite the testimony from plaintiff and Trojak that indicated the mediator had learned of the affair before the mediation session, and not from either of them, Gulnick paired that discovery with a blanket allegation that plaintiff breached his "confidences" to terminate her as his secretary. He specifically claimed that confidential information discussed in closed-door meetings had become widely known to others in the office shortly after those meetings; he blamed plaintiff for spreading this information and relied on this to justify her termination and demotion. But, since the record indicates that she was not involved in such meetings and that her testimony was that she could not hear any conversations from inside his office when the door was closed, we agree with plaintiff that, based on the series of events, there is a question of fact as to whether Gulnick's explanation was pretextual. This is particularly so in light of plaintiff's options following her termination, which were to return as principal account clerk under Trojak or join a different department that would still be subject to Trojak's review, and therefore Gulnick manufactured only an illusory conclusion to the situation which was far from being a reasonable [*4]step to address the harassment (see Russell v New York Univ., 42 NY3d at 389). Based on the foregoing, when viewed in a light most favorable to plaintiff, we conclude that a question of fact exists whether plaintiff's termination, demotion and ultimate separation from her employment with the County arose under circumstances supporting an inference of gender-based discrimination, to which Gulnick's verbal comments and plaintiff's adverse employment outcome were sufficiently linked in the record before us to allow a reasonable juror to reach such conclusion (see Chiara v Town of New Castle, 126 AD3d at 124).
Next, a plaintiff asserting a cause of action for a hostile work environment must offer "proof of a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment" (Long v Aerotek, Inc., 202 AD3d 1216, 1218 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]). The discriminatory acts complained of "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. In evaluating such claim, a court must consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with the plaintiff's work performance" (White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d 1230, 1231-1232 [3d Dept 2023] [internal quotation marks and citations omitted]).
Given the way plaintiff's gender discrimination claim is framed — namely, that Trojak's conduct was enabled by Gulnick's inaction due to his possibly discriminatory beliefs — we reach the same conclusion regarding plaintiff's hostile work environment cause of action. The record establishes that employees within plaintiff's department — from the deputy commissioners to the previous principal account clerks who transferred positions to avoid Trojak's harassment — were well aware that "nothing" could be done to address the bullying because of Gulnick's refusal to act. Although defendants attempt to minimize the number of explicit comments made by Gulnick, which plaintiff testified occurred approximately once a week or 10 to 20 times when she was serving as his confidential secretary, it is his constant inaction possibly stemming from his beliefs about women that were sowed into the psyche of the office, enabling Trojak and others to freely attack other coworkers like plaintiff because it was well known that Gulnick would not intervene with "women being nasty" and allowed an intolerable work environment resulting from his discrimination to exist (see Long v Aerotek, Inc., 202 AD3d at 1222). Indeed, plaintiff testified that she was known as the "first person that [Gulnick] has actually ever fired because he never addresse[*5][d] any personnel issues," despite two others facing similar harassment from Trojak who were transferred. In our view, the employees' understanding of this, coupled with gender-based discriminatory comments made by Gulnick, are sufficient to raise a triable issue of fact whether such conduct was pervasive and not merely episodic (see Russell v New York Univ., 42 NY3d at 389; White-Barnes v New York State Dept. of Corr. & Community Supervision, 214 AD3d at 1234; Kwong v City of New York, 204 AD3d 442, 445 [1st Dept 2022], lv dismissed 38 NY3d 1174 [2022]; Ananiadis v Mediterranean Gyros Prods., Inc., 151 AD3d 915, 917-918 [2d Dept 2017]). We are also satisfied that, when further considering plaintiff's testimony that she delayed reporting or even raising certain complaints because she knew nothing would happen, "that a reasonable person could find both that plaintiff subjectively perceived the alleged conduct as abusive and that the alleged conduct created an objectively hostile or abusive environment so as to warrant a trial on her hostile work environment claim" (Long v Aerotek, Inc., 202 AD3d at 1220 [internal quotation marks, brackets and citation omitted]). Furthermore, as this claim is based partially on Trojak's harassment and bullying, plaintiff's theory that Trojak is liable as she aided and abetted Gulnick in creating a hostile work environment is similarly a determination best suited for a jury (see id. at 1222; see also Executive Law § 296 [6]; Ananiadis v Mediterranean Gyros Prods., Inc., 151 AD3d at 918).
Lastly, to establish a claim for retaliation, a "plaintiff must show that (1) [he or she has] engaged in protected activity, (2) the defendant was aware that the plaintiff participated in the protected activity, (3) the plaintiff suffered adverse action based upon the activity, and (4) there is a causal connection between the protected activity and the adverse action" (Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights, 41 NY3d 326, 331 [2024] [internal quotation marks and citation omitted]; see Hollandale Apts. & Health Club, LLC v Bonesteel, 173 AD3d 55, 68 [3d Dept 2019]). A plaintiff need not prove that the protected activity in question was the reporting of an actual violation of the Human Rights Law, but only that the report was based on his or her reasonable belief that a violation occurred (see Matter of Clifton Park Apts., LLC v New York State Div. of Human Rights, 41 NY3d at 334; Matter of New York State Off. of Mental Retardation & Dev. Disabilities [Staten Is. Dev. Ctr.] v New York State Div. of Human Rights, 164 AD2d 208, 210 [3d Dept 1990]). Here, plaintiff's complaints and participation in the mediation are protected activities that Gulnick was aware of, as he had forwarded plaintiff's email complaint to personnel and relied on alleged comments that she made during the mediation as a ground for terminating her position as his confidential secretary. Such mediation concerned, in part, the hostile work [*6]environment not just due to Trojak's bullying, but also due to Gulnick's inaction, possibly stemming from his discriminatory views. It is undisputed that Gulnick was aware of the mediation and that his demeanor toward plaintiff — as well as Trojak's demeanor toward plaintiff — changed right away and he immediately began a process to fire, demote and transfer plaintiff to a new role (see Herskowitz v State of New York, 222 AD3d 587, 589-590 [1st Dept 2022]; Ananiadis v Mediterranean Gyros Prods., Inc., 151 AD3d at 920; Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson, 41 AD3d 1138, 1141 [3d Dept 2007], lv denied 10 NY3d 706 [2008]). When further considering that the two prior principal account clerks also raised complaints with Trojak's harassment but accepted other positions in the County rather than pursing it to mediation like plaintiff, it further underscores that causal connection between plaintiff's engagement in the protected activities and the adverse action she sustained (see Long v Aerotek, Inc., 202 AD3d at 1222). Such adverse action also served as the impetus for plaintiff's hotline report, where she described herself as a whistleblower facing retaliation from defendants, establishing that she had a reasonable belief that a violation had occurred. Although it was not clear whether she was referring to herself as a whistleblower due to discrimination, harassment or other improprieties plaguing that office, this only serves to highlight an ambiguity in the record that is best resolved by a trier of fact and not as a matter of law by a court. We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and motion denied.